UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATASHA VAN DUSER, JACKSON LEA, CHARLOTTE MASON, TRISTAN HSU, MORGANN DANIELS, AMERICA ROSE MARVELOUS HERVE, RYAN MICKELSEN, KAYL WARD, STEPHANIE OSPINA, ZOE FROMER, NICOLE IRRIZARRY, and JULIETA WINTERS, *individually and on behalf of all other persons similarly situated*,

                              Plaintiffs,

                    -against-

TOZZER LTD. d/b/a Niagara NYC and Lovers of Today, LAPIZZA SHOP, INC. d/b/a 96 Tears, Berlin and Cabin Down Below, BOWERY TECH RESTAURANT LLC d/b/a Bowery Electric, JONATHAN TOUBIN, JOSHUA YERINGTON a/k/a "Johnny T", JESSE MALIN, and LAURA MCCARTHY, Jointly and Severally,

                              Defendants.

23-cv-9329 (AS)

<u>OPINION AND ORDER</u>

---

ARUN SUBRAMANIAN, United States District Judge:

Plaintiffs are bartenders, servers, barbacks, and a coat check attendant who worked at several Manhattan bars. Dkt. 39 ¶¶ 1, 32. Defendants jointly own, operate, and manage those bars. *Id*. ¶ 32.

Plaintiffs sued defendants for retained tips and unpaid wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., and for unpaid wages, failure to provide time-of-hire notices and wage statements, untimely pay, and retained tips under the New York Labor Law (NYLL), N.Y. Lab. Law §§ 650 *et seq*. and §§ 190 *et seq*. Defendants moved to dismiss. *See* Dkt. 27. Before the Court could decide that motion, plaintiffs filed an amended complaint. *See* Dkt. 39. Defendants now move to dismiss that too. *See* Dkt. 40. Defendants' motion is DENIED.

## BACKGROUND

Plaintiffs claim defendants didn't pay them for the time they spent working before and after their scheduled shifts, for trainings they were required to attend, or when they worked more than ten hours in a day. Dkt. 39 ¶¶ 69-76, 82-86. And, they say, defendants took their tips. *Id*. ¶¶ 56-63. Plaintiffs also claim that when they were paid, it wasn't weekly or with accurate wage

statements. *Id.* ¶¶ 67-68, 77. Finally, plaintiffs allege that they weren't given time-of-hire notices when they were hired or at any time during their employment. *Id.* ¶ 78.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

### I.    The FLSA provides a cause of action for unlawful retention of tips.

Plaintiffs assert a claim under § 203(m)(2)(B) of the FLSA, which provides: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

Defendants argue that the FLSA does not create a cause of action against employers for unlawful retention of tips. That's wrong. In 2018, Congress amended the FLSA to add a cause of action for precisely that. *See* 29 U.S.C. § 203(m)(2)(B); *id.* § 216(b) ("Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."); *accord Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 232 (3d Cir. 2019); *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 256 n.1 (5th Cir. 2018).

Almost every case that defendants cite predates the 2018 amendment. *See Azeez v. Ramaiah*, 2015 WL 1637871, at *6-7 (S.D.N.Y. Apr. 9, 2015); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 562 (S.D.N.Y. 2013); *Widjaja v. Kang Yue USA Corp.*, 2011 WL 4460642, at *3 n.6 (E.D.N.Y. Sept. 26, 2011). Defendants' sole post-2018 case denying the existence of a cause of action does so in a stray sentence in dicta and relies on a pre-amendment case for support. *See Weng v. HungryPanda US, Inc.*, 2022 WL 292799, at *3 n.2 (S.D.N.Y. Jan. 31, 2022) (citing *Azeez*, 2015 WL 1637871, at *6-7).

Resting mainly on their no-cause-of-action argument, defendants don't meaningfully challenge the plausibility of plaintiffs' tip-theft allegations. In scattered sentences across their opening and reply briefs, defendants say plaintiffs should have pleaded, among other things, the amount of tips supposedly withheld and the method of tip distribution. But the Court sees no reason (and defendants cite no authority) why that information should be required if plaintiffs offer other specific factual details to back up their claim that defendants took their tips. And they have. *See, e.g.*, Dkt. 39 ¶¶ 61-66 (tip-pooling requirement and tip retention generally); *id.* ¶ 232 ("When working the front door, his manager took all of the tips Plaintiff Hsu collected and said they went

2

'to the house' but those tips were not distributed to the bartenders, servers or barbacks."); *id.* ¶ 273 ("Defendants did not remit 100% of the credit card tips to Plaintiff Mickelsen."); *id.* ¶ 350 ("Defendants' managers did not allow Plaintiff Irrizarry to review how much in tips she was getting paid via cash and credit cards."); *id.* ¶ 360 ("Plaintiff Irrizarry did not keep all of her tips, with Defendants' management keeping some of her tips.").

## II.    Plaintiffs aren't asserting a gap-time claim.

Plaintiff's second cause of action is for unpaid minimum wages under the FLSA. Defendants argue this claim is one for gap-time wages. "A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). In essence, a gap-time claim seeks payment for unpaid hours even though the employee's average wage is above the required minimum. As the Second Circuit has repeatedly held, the FLSA doesn't provide a cause of action for gap time. *See id.* at 116; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Here, plaintiffs do allege a minimum-wage violation, so it's not a gap-time claim. The amended complaint states that plaintiffs' claim for unpaid minimum wages "is limited to the unpaid, mandatory training and to the extent pre- and post-shift activities reduce their hourly rate below the FLSA minimum wage." Dkt. 39 ¶ 418. In other words, plaintiffs are seeking relief for work performed in weeks when they were not paid at all—making their effective pay rate $0.00—or when what they were paid divided by their hours fell below the minimum wage. Such claims are cognizable under the FLSA. *See Dominguez v. 4 Giron Constr. Inc.*, 2024 WL 4250289, at *4 (E.D.N.Y. Aug. 15, 2024); *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242-43 (S.D.N.Y. 2015) ("For minimum-wage recovery under the FLSA, the pertinent question is whether 'the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.'" (citation omitted)).

And plaintiffs have adequately alleged their unpaid minimum-wage claim. *Cf. Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114 (2d Cir. 2023) ("[T]he plaintiff [in a FLSA case] need not keep careful records of the number of hours worked each week or calculate and plead their hours with mathematical precision." (internal quotations and citation omitted)). For most plaintiffs, the claim focuses on training sessions they were required to attend. *See* Dkt. 39 ¶ 82. The amended complaint puts forward the approximate number of hours each plaintiff worked as part of these training sessions. *See* Dkt. 39 ¶¶ 102, 112 (Van Duser); *id.* ¶ 131-32 (Lea); *id.* ¶ 185, 203 (Mason); *id.* ¶ 218 (Hsu); *id.* ¶¶ 235, 251 (Herve); *id.* ¶¶ 260, 274 (Mickelsen); *id.* ¶ 281 (Ward); *id.* ¶¶ 298, 308 (Ospina); *id.* ¶ 328, 334 (Fromer); *id.* ¶ 348 (Irrizarry); *id.* ¶¶ 368, 379 (Winters). Because the training sessions occurred in the week before plaintiffs were officially assigned shifts and were unpaid, plaintiffs' effective pay rate for the workweek of their training session was $0—obviously below the minimum wage. *See* Dkt. 39 ¶ 82. For Daniels, the amended

complaint alleges the total number of hours she worked, the approximate dates she worked, and her hourly pay rate (which fell below the minimum wage). *See* Dkt. 39 ¶¶ 171, 174-75.

Defendants say the claim isn't well-pleaded because the allegations contradict other assertions in plaintiffs' complaint, like that the training took place when plaintiffs were initially hired and that plaintiffs clocked in and out whenever they worked. *See* Dkt. 44 at 3. But drawing all inferences in plaintiffs' favor—as the Court must at this point—the mandatory unpaid training occurred after plaintiffs were initially hired but before they were added to the calendar. *See* Dkt. 39 ¶ 82 ("In the week before they are officially put on the schedule and paid for their hours worked, Defendants require new bartenders, servers and barbacks to attend at least one training session . . . .").

### III.    Plaintiffs sufficiently pleaded willfulness.

Defendants next argue that plaintiffs have not adequately alleged that defendants willfully violated the FLSA. Whether the violations were willful determines the applicable statute of limitations. Without a showing of willfulness, the FLSA requires that claims be brought within two years of the alleged failure to pay. *See* 29 U.S.C. § 255(a). If the violations were willful, the FLSA extends the statute of limitations by a year and permits claims brought within three years of their accrual. *Id*.

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). To adequately plead willfulness, "a plaintiff must allege facts that permit a plausible inference that the defendant willfully violated the FLSA." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021). A "mere allegation of willfulness" is not enough. *Id*.

While the complaint's allegations of willfulness are thin, the alleged violations are obvious (not paying employees for all hours they worked, which could lead to minimum-wage violations, and thieving employees' tips), defendants operated "numerous bars for many years," and there are further allegations that defendants misreported hours and gave plaintiffs multiple paychecks when they worked at multiple bars to "make it difficult for them to determine whether they are being lawfully paid." Dkt. 39 ¶¶ 87-90. On top of that, several plaintiffs have alleged that they complained to management "multiple times about not being paid for all hours worked," a good indicator that defendants had notice that their conduct wasn't in line with the FLSA. *See* Dkt. 39 ¶¶ 113, 149, 314; *Malcolm v. City of New York*, 2023 WL 4298869, at *3 (S.D.N.Y. June 30, 2023) (willfulness plausibly alleged where plaintiff made defendants aware of FLSA violations). The Court believes there is enough—perhaps just enough—to clear the pleading threshold.

### IV.    Jonathan Toubin was plaintiffs' employer.

The FLSA extends liability to any "employer" who violates the statute's minimum wage and overtime provisions. *See* 29 U.S.C. § 216(b), (e)(2). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer." *Id*. § 203(d). Defendants argue

plaintiffs haven't sufficiently alleged that one of the individually named defendants—Jonathan Toubin—was plaintiffs' employer.

To determine whether an individual is an employer, courts look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (citation omitted). Employer status "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). "Control may be restricted, or exercised only occasionally . . . ." *Id.*

Plaintiffs have plausibly alleged that Toubin was their employer. Though the complaint contains its fair share of boilerplate language, it offers at least some factual detail warranting discovery. *See, e.g.*, Dkt. 39 ¶ 54 ("When Defendants [including Toubin] come to their bars, they often tell their employees what to do and how to do it. They will also sometimes call one of the employees working at the bars and yell at them what to do and how to do it."); *id.* ¶ 139 ("Toubin . . . would attend the staff meetings . . . and would talk about how to operate the bars."); *id.* ¶ 283 ("[Toubin] would tell Plaintiff Ward to fix the lights, fix the fans and to change the music."). That's enough for plaintiffs to satisfy their burden at this early stage. *See Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 105 (S.D.N.Y. 2019); *see also Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) (employer status adequately pleaded despite heavy reliance on conclusory allegations where plaintiffs added that defendant "directly supervised" plaintiffs).

Defendants point the Court towards Toubin's career as a DJ, record producer, musician, and writer. They argue that his artistic career makes it "unbelievable" that he could also be plaintiffs' employer. Dkt. 41 at 19. Even if the Court were to take judicial notice of Toubin's musical accomplishments, this doesn't mean he didn't also act as plaintiffs' employer.

## V.  The Court will retain jurisdiction over plaintiffs' state-law claims.

A federal court has supplemental jurisdiction over state-law claims "that . . . form part of the same case or controversy" as the federal-law claims. 28 U.S.C. § 1367(a). This means "the federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (citation omitted).

A court may nevertheless decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity . . . ." *Klein & Co. Futures v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006).

The Court plainly has jurisdiction over plaintiffs' NYLL claims. The FLSA and NYLL claims "involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the same work, for the same employers." *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 594 (S.D.N.Y. 2020); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (holding that district court properly exercised supplemental jurisdiction over NYLL claims where NYLL and FLSA claims "[arose] out of the same compensation policies and practices of [employer]").

Defendants argue that the Court should decline jurisdiction under § 1367(c)(2) because the state-law claims "predominate[]" over their federal ones. Given that several of plaintiffs' FLSA and NYLL claims overlap in substance and standard, the Court disagrees. *See Shahriar*, 659 F.3d at 246 (no substantial predominance where NYLL and FLSA claims had "similar standard[s]"). In any event, even where one of the § 1367(c) factors is applicable, a district court still should consider whether declining jurisdiction would promote "economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).

None of these factors favors sending plaintiffs to state court. This case was filed over a year ago and discovery is nearly complete. *See* Dkt. 33. And state court isn't a better fit for plaintiffs' claims: "wage-and-hour cases like this one are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018). Making the parties start over again in state court would be neither fair nor convenient. *See id*.

## VI.    Plaintiffs have Article III standing to assert their NYLL claims.

Statutory jurisdiction aside, the Court must also have constitutional jurisdiction to hear plaintiffs' state-law claims. *Cartagena v. Sixth Ave. W. Assocs. LLC*, 2023 WL 6318170, at *3 n.1 (S.D.N.Y. Sept. 28, 2023) (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015)). Defendants say that plaintiffs lack standing to challenge the failure to issue time-of-hire notices and wage statements, and the failure to pay plaintiffs' wages every seven days. *See* N.Y. Lab. Law § 195.1, 195.3, and § 191.1(a). Relying on *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), defendants argue plaintiffs haven't suffered a concrete harm.

Plaintiffs have standing. Relevant to the defendant's failure to issue time-of-hire notices and wage statements, plaintiffs allege:

- Defendants' failure to provide their bartenders, servers, barbacks and coat check attendants with the N.Y. Lab. Law § 195.1 notice and accurate wage statements deprived them of the information necessary for review their wages and hours worked

and was a direct cause for their economic injury and, in fact, resulted in their wages being underpaid.

- If Defendants had complied with the N.Y. Lab. Law §§ 195.1 and 195.3 notices and wage statements, their bartenders, servers, barbacks and coat check attendants would have been able to see that they were not being lawfully paid and would have been able to avoid underpayment of their wages.

Dkt. 39 ¶¶ 79-80. These are "'downstream consequences' from failing to receive the required information." *TransUnion LLC*, 594 U.S. at 442 (citation omitted). Plaintiffs say that if they had been provided with the required information, they would have been able to doublecheck what they were paid and avoid underpayment. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided").

The harm plaintiffs allege is far from speculative. Plaintiffs aren't positing possible injuries they could have suffered or opining on the risks of harm that might have materialized. *See Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021). What they say is that they were in fact harmed because they weren't paid the wages they were owed and lacked information that could have helped them catch the violation. *See Guthrie*, 113 F.4th at 310 ("[A] plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest [in the litigation] . . . .").

On their claim that defendants didn't pay them every seven days, plaintiffs allege:

- By delaying payment to their bartenders, servers, barbacks and coat check attendants, [plaintiffs] were underpaid for the work they performed; they were deprived of money that they are owed and need; the value of the money, when eventually paid, is less than it would have been if they were timely paid; and they were not able to purchase everything they would have purchased if timely paid.

Dkt. 39 ¶ 68. Defendants argue that temporary deprivations of money aren't sufficient to make out a concrete injury under Article III.

They are. The Ninth, Seventh, and Eleventh Circuits have held as much. *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019); *see also Pontes v. Rowan Univ.*, 2021 WL 4145119, at *4 n.5 (3d Cir. Sept. 13, 2021) (noting this line of cases). Courts in this Circuit agree. *See, e.g.*, *Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 63-64 (S.D.N.Y. 2023) (collecting cases).

As the Ninth Circuit explained in *Van*, "[t]hese decisions reflect the firmly established principle that tort victims should be compensated for loss of use of money." *Van*, 962 F.3d at 1164. Plaintiffs' claims fall well within this rule. They couldn't use the money defendants put off paying

them. This is an economic injury—"the epitome of 'concrete.'" *MSPA Claims 1*, 918 F.3d at 1318 (quoting *Craig v. Boren*, 429 U.S. 190, 194-95 (1976)). It doesn't matter that the delays were for just a week and not longer. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." (cleaned up)).

Defendants have no real response, instead citing cases that aren't relevant here. *See Geraldes v. Spanish Dance Arts Co., Inc.*, 23-cv-03925 (S.D.N.Y. Feb. 14, 2024) (dismissing for lack of standing where plaintiff failed to plead downstream consequences of asserted informational injury); *Cartagena*, 2023 WL 6318170, at *3 (S.D.N.Y. Sept. 28, 2023) (same). Neither of these is about temporary deprivations of anything, much less money.

## CONCLUSION

For these reasons, defendants' motion to dismiss is denied. The Clerk of Court is directed to terminate Dkt. 40.

SO ORDERED.

Dated: October 31, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge